UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
|         Plaintiff, | ) | |
| v. | ) | No. 17 CR 50043 |
| | ) | Judge Iain D. Johnston |
| Kennin K. Darden, | ) | |
|         Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Kennin Darden has filed a motion under the First Step Act seeking a compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) based on his risk of complications from COVID-19 because of sickle cell anemia. For the reasons that follow, Mr. Darden's motion [57] is denied.

## BACKGROUND

Mr. Darden pleaded guilty to one count of possession of heroin with intent to distribute, *see* 21 U.S.C. § 841(a)(1), and one count of possession of a firearm as a felon, *see* 18 U.S.C. § 922(g). At sentencing, U.S. District Judge Kapala, who has since taken inactive senior status, calculated Mr. Darden's total offense level to be 23, his criminal history category to be IV, and sentenced to 70 months' incarceration, the bottom of his advisory guideline range of 70 to 87 months. Dkt. 50. Mr. Darden did not appeal, but did file a motion under 28 U.S.C. § 2255 to receive credit for time served in the Winnebago County jail for a parole violation. *See Darden v. United States*, No. 18 CV 50340 (N.D. Ill.), Dkt. 1. Judge Kapala denied the § 2255 motion. *Id.*, Dkt. 7. Mr. Darden's projected release date is April 16, 2023. Supp. Motion [68] at 2.

Mr. Darden now seeks relief under the First Step Act. *See* 18 U.S.C. § 3582(c)(1)(A)(i). Upon receipt of his initial *pro se* motion, the Court assigned the federal defender to assist Mr. Darden, and the federal defender filed a supplement to the *pro se* motion. As always, the Court thanks the federal defender for the assistance with this case. In his filings, Mr. Darden argues that the Court should reduce his sentence to time served followed by supervised release on home confinement because his sickle cell anemia puts him at an increased risk of severe illness from COVID-19.

## ANALYSIS

Under the First Step Act, a court may reduce a defendant's sentence based on a motion by either the director of the Bureau of Prisons or by the defendant himself. 18 U.S.C. § 3582(c)(1)(A). A reduction under § 3582(c)(1)(A)(i) may be based only on "extraordinary and compelling reasons," and must take into account the sentencing factors set out at 18 U.S.C.

§ 3553(a). The defendant bears the burden of establishing that he or she is entitled to compassionate release under the First Step Act. *See United States v. Gold*, 459 F. Supp. 3d 1117, 1119 (N.D. Ill. 2020). Before filing such a motion, a defendant must first ask his warden to seek a reduction on his behalf and either exhaust all administrative remedies if the request is declined, or wait 30 days after making the request, whichever comes first. *See* 28 U.S.C. § 3582(c)(1)(A). It is undisputed that Mr. Darden exhausted his administrative remedies before filing his motion under the First Step Act. Dkt. 71 at 10.

The Court prefaces its analysis of Mr. Darden's argument with the recognition that it, as well as the rest of the world, is still learning about the virus and therefore, is making its best judgments bases upon the information that is currently available. Mr. Darden contends that his sickle cell anemia places him at a higher risk for severe illness from the virus that causes COVID-19, citing in support guidelines from the Centers for Disease Control, which advise that "[h]aving sickle cell disease (SCD) increases your risk for severe illness from COVID-19." *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited 2/3/2021). Sickle cell anemia is one of several types of sickle cell disease. *See* https://www.cdc.gov/ncbddd/sicklecell/facts.html (last visited 2/3/2021).

But it is unclear from the record whether Mr. Darden has sickle cell disease. In his *pro se* motion, he merely states that he has sickle cell anemia. Dkt. 57 at 1, 4. His counsel's supplemental brief points to his Presentence Investigation Report, which his probation officer submitted on January 11, 2018. Dkt. 33. According to the PSR, medical records from the Regional Office of Education reported that the defendant was diagnosed with sickle cell anemia when he was three, and an aunt reported to the probation officer that prepared the PSR that the defendant may have "sickle cell trait." *Id.* at 25. The government submitted what appears to be those Regional Office of Education medical records. Dkt. 71-1 at 2-13. According to one document from January 1995 entitled "Rockford Public Schools Health Information – Original", the defendant was diagnosed with sickle cell anemia the year before during an emergency room visit for abdominal pain. *Id.* at 9. On a document from April 1996 entitled "Rockford Public Schools Health Information – Reevaluation," a nurse repeated that the defendant had been diagnosed with sickle cell anemia at age three, and noted that he receives medication as needed for abdominal pain during sickle cell incidents. *Id.* at 13. But on that same form, the nurse also wrote, "Return to Dr. Darland for recheck – sickle cell," and to "See Dr. Darland for sickle cell management." *Id.* A health evaluation form Dr. Darland signed in 1995 includes a note "Sickle Cell Anemia." *Id.* at 7. On a health evaluation form from 2000, Dr. Spentzas noted "sickle cell trait by Report." *Id.* at 4.

But according to other records, the defendant never reported, and in several instances even denied, having sickle cell anemia. Other evaluations among his school medical records never mention sickle cell anemia. Specifically, the two most recent health evaluation forms from Dr. Darland leave blank the portion of the form where sickle cell anemia can be noted. Dkt. 71-1 at 5, 6. Likewise, the sickle cell portion of a physical examination report completed by Dr. Danko in 2005 is blank. *Id.* at 3. According to the PSR, the defendant never reported his sickle cell anemia to his probation officer. Dkt. 33 at 25. The other medical records submitted to the Court are from the Bureau of Prisons dating from 2018 through 2020, plus a few pages from his time at the Winnebago County jail. *Id.* at 32 – 105. None of them note any report or diagnosis

of sickle cell anemia. Four of them report that during a health screening, the defendant denied having sickle cell anemia. *Id.* at 35, 38, 43, and 71.

Given the conflicting reports, the Court is left uncertain whether the defendant has sickle cell disease. The defendant has not acknowledged the conflicting reports, and as a consequence has offered no explanation for why some early records report he has sickle cell anemia, while other earlier records and all recent records are either silent on the issue or report that he does not have it. The only cure is a bone marrow or stem cell transplant, https://www.cdc.gov/ncbddd/sicklecell/facts.html, so it cannot have resolved itself. Maybe later tests determined that his earlier diagnosis was wrong. Maybe only his caregivers knew about it until recently. The Court is left to speculate. Even if the defendant has some form of sickle cell condition, it is not clear from the records whether it is sickle cell disease, or sickle cell trait. The difference is significant. According to the CDC, people with sickle cell disease including sickle cell anemia have two sickle cell genes, while people with sickle cell trait have just one, meaning they do not usually exhibit any symptoms of sickle cell disease, but can pass the trait to their children. *See* https://www.cdc.gov/ncbddd/sicklecell/traits.html (last visited 2/2/2021). Only sickle cell disease, not sickle cell trait, is listed as an underlying condition that can increase the risks of severe illness in people who contract COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. As noted earlier, the defendant bears the burden of establishing an extraordinary and compelling reasons warranting a compassionate release. *See Gold*, 459 F. Supp. 3d at 1119. Without any explanation for the conflicting medical evidence, he has not satisfied his burden of establishing a basis for compassionate release based on having sickle cell disease.

In his supplemental memorandum, Mr. Darden notes that the Bureau of Prisons has assigned him "Care Level 2," citing in support a Bureau of Prisons "Progress Report." Suppl. PSR [61] at 4. But the report does not explain why he was assigned Care Level 2, or even explain what Care Level 2 means. The report also notes "Stable, Chronic Care," though it does not identify for what condition chronic care is being provided, though nowhere on the report or elsewhere in the Bureau of Prisons medical records provided occurs any reference to sickle cell anemia. Although there is no record before this Court that the Bureau of Prisons has treated him as having sickle cell anemia, to the extent it has, the Bureau reports that it has started vaccinating inmates, *see* https://www.bop.gov/resources/news/pdfs/20210115_press_release_vaccination.pdf (last visited 2/3/2021), and prioritizes inmates with sickle cell anemia, *see* https://www.bop.gov/resources/pdfs/2021_covid19_vaccine.pdf at 6 (inmates with sickle cell disease are among those in Priority Level 2, behind only those inmates who serve as health care workers or are housed in nursing care or other health care units.) (last visited 2/3/2021).

Even if the defendant had established that he had sickle cell anemia that created a risk of severe illness if he contracted COVID-19, the Court's review of the sentencing factors set out in 18 U.S.C. § 3553(a) would still not favor compassionate release. Under 18 U.S.C. § 3553(a), the court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing, which are the following:

    (A)       to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B)       to afford adequate deterrence to criminal conduct;
    (C)       to protect the public from future crimes by the defendant; and
    (D)       to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a)(2). To those ends, the court must take into account the following factors:

    (1)       the nature and circumstances of the offense and the history and characteristics of the defendant;

            . . .

    (3)       the kinds of sentence available;
    (4)       the kinds of sentence and the sentencing range established [under the Sentencing Guidelines];
    (5)       any pertinent policy statement [in the Sentencing Guidelines];
    (6)       the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
    (7)       the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1-7).

       Mr. Darden contends that the sentencing factors favor his release because during his current incarceration, he has had no reported disciplinary history, has been employed and maintained satisfactory work performance, has successfully completed a significant amount of educational programming, and has satisfied all of the financial obligations ordered as part of his sentence. Suppl. Mem. [68] at 11. Mr. Darden argues that these accomplishments demonstrate that he "has sincerely learned from his imprisonment and that further confinement is unnecessary." *Id.* at 12. The probation office supports these favorable reports of how Mr. Darden's has spent his time spent while incarcerated. Suppl. Report [61] at 3-5. The Court commends Mr. Darden on these accomplishments—his work turning around his life will serve him well upon his release.

       However, the Court must balance these accomplishments against other aspects of his nature and character, as well as the nature and character of his offense, past behavior, and the other factors relevant under § 3553(a). According to his PSR, the defendant admitted that as part of the underlying offense that he shot multiple rounds out of car window while driving, and that a juvenile with him did the same, all in a residential neighborhood. PSR [33] at 6-7. He was returning fire from someone shooting at him, the gun he used was stolen (though he bought it "off the street" a week earlier), and he had on him empty plastic baggies and heroin that he intended to distribute. *Id.*; Plea [30] at p.6(b). Some of the bullets fired during the shootout hit a home. PSR [33] at 6. The defendant's offense was very serious, put at risk the lives of those who lived in this residential neighborhood, and created a danger to the community. Moreover,

- 5 -

the defendant was an armed felon intent on distributing heroin, creating yet another danger to the community.

Mr. Darden contends that because he has now been incarcerated for this offense for more than four years (though he is not being credited for it all because part of that time was spent at the Winnebago County jail for a parole violation), that he has been deterred from committing further crimes. But his long criminal history includes numerous instances of committing new offenses while on probation or parole for earlier offenses. While on probation for aggravated unlawful use of a weapon, he committed the offense of domestic battery. PSR [33] at 11-13. While on probation for drug and firearm offenses, he admitted to firearms violations, his probation was revoked, and he was incarcerated for the probation violations. *Id.* at 14-15. He has been twice convicted of drug and/or firearm offenses (including the instant offense) committed while on parole for earlier offenses. *Id.* at 14-16. Mr. Darden's history demonstrates that in the past, periods of probation and even incarceration have not deterred him from committing additional offenses and presenting a danger to the community.

The Court has considered the favorable reports from the period of his current incarceration, the defendant's history and character, and the nature and circumstances of his underlying and past offenses, and in an exercise of its discretion determines that, on balance, the sentencing factors set out in § 3553(a) do not favor granting a compassionate release to Mr. Darden.

## CONCLUSION

Because Mr. Darden has not established an extraordinary and compelling reasons to grant him relief, and because even if he had balancing the § 3553(a) factors would not favor a release, Mr. Darden's motion [57] for a sentence reduction under the First Step Act is denied.

Date: February 3, 2021     By: _____
                               Iain D. Johnston
                               United States District Judge